1  BRYAN WILSON (CA SBN 138842)
   BWilson@mofo.com
2  WEIZHI STELLA MAO (CA SBN 335136)
   SMao@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, CA  94304-1018
   Telephone:  (650) 813-5600
5  Facsimile:  (650) 494-0792

6  A. MAX OLSON (CA SBN 155510)
   AOlson@mofo.com
7  MORRISON & FOERSTER LLP
   Shin-Marunouchi Building, 29th Floor
8  5-1 Marunouchi 1-chome
   Chiyoda-ku, Tokyo  100-6529
9  Japan
   Telephone:  +81-3-3214-6522
10 Facsimile:  +81-3-3214-6512

11 Attorneys for Petitioner
   FUJITSU SEMICONDUCTOR LIMITED

12

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                         SAN JOSE DIVISION

17

18 FUJITSU SEMICONDUCTOR LIMITED,        Case No.    5:22-mc-80313

19               Petitioner,             **PETITION FOR ORDER**
                                         **COMPELLING ARBITRATION**
20         v.                            **PURSUANT TO ARTICLE II OF**
                                         **THE NEW YORK CONVENTION**
21 CYPRESS SEMICONDUCTOR                 **AND SECTION 206 OF THE**
   CORPORATION,                          **FEDERAL ARBITRATION ACT,**
22                                       **9 U.S.C. § 206**
                 Respondent.
23                                       Date:       To be determined
                                         Time:       To be determined
24                                       Courtroom:  To be determined
                                         Judge:      To be determined
25

26          **REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF PETITION ........................................................................................................... 1

RELIEF SOUGHT .................................................................................................................. 1

THE PARTIES ........................................................................................................................ 1

JURISDICTION ...................................................................................................................... 2

VENUE ................................................................................................................................... 3

THE ARBITRATION AGREEMENTS ................................................................................. 3

PROCEDURAL HISTORY ..................................................................................................... 7

LEGAL STANDARDS ........................................................................................................... 8

ARGUMENT ......................................................................................................................... 13

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT & T Techs., Inc. v. Communications Workers of Am.*,
475 U.S. 643 (1986) .................................................................................................11, 12

*Balen v. Holland Am. Line, Inc.*,
583 F.3d 647 (9th Cir. 2009) .................................................................................13

*Brennan. v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...............................................................................15

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ...............................................................................14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)..........................................................................11, 12

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
109 F. Supp. 2d 1236 (S.D. Cal. 2000) ..........................................................2, 9, 12

*Cypress Semiconductor, Corp. v. Fujitsu Semiconductor Ltd..*,
Case No. 20-cv-00193-LHK, 2020 U.S. Dist. LEXIS 32907 (N.D. Cal.
Feb. 25, 2020) ......................................................................................................5

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985).........................................................................................10, 11

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1985) ............................................................................................15

*Galilea, LLC v. AGCS Marine Ins. Co.*,
879 F.3d 1052 (9th Cir. 2018)................................................................................15

*GE Energy Power Conversion Fr. SAS Corp. v. Outokumpo Stainless USA LLC*,
140 S. Ct. 1637 (2020) ...........................................................................................2

*Gilbert v. Bank of Am.*,
Case No. C 13-01171 JSW, 2015 U.S. Dist. LEXIS 46120
(N.D. Cal. Apr. 8, 2015) .......................................................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)................................................................................12, 13, 16

*Inlandboatmens Union of the Pacific v. Dutra Group*,
279 F.3d 1075 (9th Cir. 2002), *overruled on other grounds by Albino v. Baca*,
747 F.3d 1162 (9th Cir. 2014)................................................................................12

*Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*,
820 F.2d 1531 (9th Cir. 1987)................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)................................................................................................................11, 12

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983)..........................................................................................................................11

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013)......................................................................................................14

*Portland GE v. Liberty Mut. Ins. Co.*,
    862 F.3d 981 (9th Cir. 2017)...................................................................................................14, 15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)......................................................................................................................12

*Prograph Int'l Inc. v. Barhydt*,
    928 F. Supp. 983 (N.D. Cal. 1996) ..................................................................................12, 13, 14

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991).........................................................................................................11

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
    969 F.2d 953 (10th Cir. 1992).........................................................................................2, 10, 14

*SB Liquidation Trust v. AU Optronics Corp. (In re TFT-LCD Antitrust Litig.)*,
    Case No. M 07-1827 SI MDL No. 1827, 2011 U.S. Dist. LEXIS 106268
    (N.D. Cal. Sept. 19, 2011)......................................................................................................13, 14

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974)......................................................................................................................11

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)......................................................................................................................11

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999)....................................................................................................11, 12

*Twi Lite Int'l v. Anam Pac. Corp.*,
    Case No. C-96-2323 SI, 1996 U.S. Dist. LEXIS 16060
    (N.D. Cal. Oct. 24, 1996)..............................................................................................................14

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)......................................................................................................................11

*Viewsonic Corp. v. Chunghwa Picture Tubes, LTD. (In re Cathode Ray Tube (Crt)
    Antitrust Litig.)*,
    MDL No. 1917, 2014 U.S. Dist. LEXIS 175521 (N.D. Cal. Dec. 18, 2014) ...........................15

**Statutes and Other Authorities**

28 U.S.C. § 1331 ..................................................................................................................................2

28 U.S.C. § 1391(d) .............................................................................................................................3

Commercial Arbitration Rules ("JCAA Rules") of the Japan Commercial
    Arbitration Assocation .................................................................2, 6, 10, 13, 14, 15, 16

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of
    June 10, 1958, 1970 U.S.T. LEXIS 115, Treaty No. TIAS 6997
    (Dec. 29, 1970).........................................................................1, 2, 8, 9, 10, 13, 14, 19

FAA Section 201, 9 U.S.C. § 201 ............................................................................9, 10

FAA Section 202, 9 U.S.C. § 202 ............................................................................9, 13

FAA Section 203, 9 U.S.C. § 203 ...................................................................................2

FAA Section 204, 9 U.S.C. § 204 ...................................................................................3

FAA Section 206, 9 U.S.C. § 206 .......................................................................1, 9, 19

JCAA Rules, Article 41 ...................................................................................................15

JCAA Rules, Article 47.1 .........................................................................................10, 15

Chapter I, Article 1, of the Arbitration Law (Law No. 138 of August 1, 2003).......................9, 10

Chapter IV, Article 23, of the Arbitration Law (Law No. 138 of August 1, 2003) ...................9, 10

U.S. Const. art. VI cl. 2 ...................................................................................................2

**NOTICE OF PETITION**

**To Respondent Cypress Semiconductor Corporation and its Counsel:**

**PLEASE TAKE NOTICE** that on a date and time to be determined by the Court, Petitioner Fujitsu Semiconductor Limited ("FSL") will and hereby does petition this Court for an order compelling arbitration of the dispute, difference, controversy, or claim between Respondent Cypress Semiconductor Corporation ("Cypress") and FSL set forth in the cross-complaint filed by Cypress against FSL in the Superior Court of the State of California for the County of Santa Clara, Case No. 19-CV-359055, on or about May 23, 2022 ("Cross-Complaint"), pursuant to Article II of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention" or "Convention") and Section 206 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 206.  The Petition is based upon this Notice of Petition, the points and authorities set forth below, the accompanying Declaration of A. Max Olson in Support of Petition for Order Compelling Arbitration ("Olson Declaration" or "Olson Decl.") and the exhibits attached thereto, the accompanying Declaration of Takahiro Nonaka in Support of Petition for Order Compelling Arbitration ("Nonaka Declaration" or "Nonaka Decl.") and the exhibits attached thereto, and any further evidence and argument that may be presented in support of the Petition.

**RELIEF SOUGHT**

FSL hereby seeks an order compelling arbitration of the dispute, difference, controversy, or claim between Cypress and FSL set forth in the Cross-Complaint.  A true and correct copy of the Cross-Complaint (minus its exhibit) is attached as **Exhibit A** to the Olson Declaration.

**THE PARTIES**

1.     Petitioner FSL is a corporation existing under the laws of Japan with a registered office at 2-100-45 Shin-Yokohama, Kohoku-ku, Yokohama, Kanagawa 222-0033, Japan.  (Olson Decl. ¶ 8.)

2.     Respondent Cypress is a Delaware corporation with a principal place of business at 198 Champion Court, San Jose, California 95134.  (*Id.* ¶ 8.)  In 2015, Cypress merged with

1  Spansion Inc. and, by January 2016, Cypress owned 100% of Nihon Spansion Limited and

2  Spansion LLC ("Spansion").  (*Id*. ¶ 6.)

3                                                **JURISDICTION**

4       3.       United States and Japan are signatories to the New York Convention.  The New

5  York Convention and its list of signatories is reprinted at 1970 U.S.T. LEXIS 115, Treaty

6  No. TIAS 6997 (Dec. 29, 1970).  The United States ratified the New York Convention on

7  September 30, 1970.  *GE Energy Power Conversion Fr. SAS Corp. v. Outokumpo Stainless USA*

8  *LLC*, 140 S. Ct. 1637, 1644 (2020).  The "Convention, as a treaty, is the supreme law of the land,

9  U.S. Const. art. VI cl. 2, and controls any case in any American court falling within its sphere of

10  application" such that "any dispute involving international commercial arbitration which meets

11  the Convention's jurisdictional requirements, whether brought in state or federal court, must be

12  resolved with reference to that instrument . . . ."  *Chloe Z Fishing Co. v. Odyssey Re (London)*

13  *Ltd.*, 109 F. Supp. 2d 1236, 1252-53 (S.D. Cal. 2000), *quoting Filanto, S.p.A. v. Chilewich Int'l*

14  *Corp.*, 789 F. Supp. 1229, 1234-36 (S.D.N.Y. 1992); *Riley v. Kingsley Underwriting Agencies,*

15  *Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992).

16       4.       As set forth in further detail below, Cypress and FSL agreed to arbitrate their

17  disputes, differences, controversies, and claims in Tokyo, Japan, under the Commercial

18  Arbitration Rules ("JCAA Rules") of the Japan Commercial Arbitration Association ("JCAA")

19  and the laws of Japan, pursuant to agreements to arbitrate falling under the New York

20  Convention.

21       5.       Section 203 of the FAA, 9 U.S.C. § 203, provides in relevant part:

22       **Section 203.  Jurisdiction; amount in controversy**

23       An action or proceeding falling under the Convention shall be
        deemed to arise under the laws and treaties of the United States.
24       The district courts of the United States . . . shall have original
        jurisdiction over such an action or proceeding, regardless of the
25       amount in controversy.

26       6.       Jurisdiction over this Petition is therefore proper under Section 203 of the FAA,

27  9 U.S.C. § 203, and 28 U.S.C. § 1331 (federal question).  *GE Energy*, 140 S. Ct. at 1644.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VENUE**

7.     Section 204 of the FAA, 9 U.S.C. § 204, provides:

**Section 204.  Venue**

An action or proceeding over which the district courts have
jurisdiction pursuant to section 203 of this title may be brought in
any such court in which save for the arbitration agreement an action
or proceeding with respect to the controversy between the parties
could be brought, or in such court for the district and division
which embraces the place designated in the agreement as the place
of arbitration if such place is within the United States.

8.     Cypress has its principal place of business within the U.S. District Court for the Northern District of California.  (Olson Decl. ¶ 8.)  Save for their arbitration agreements, FSL could have brought an action or proceeding against Cypress with respect to the controversy between FSL and Cypress in the U.S. District Court for the Northern District of California. Venue is therefore proper in this Court under Section 204 of the FAA, 9 U.S.C. § 204, and 28 U.S.C. § 1391(d).

**THE ARBITRATION AGREEMENTS**

**The Foundry Agreement**

9.     In 2013, FSL and Spansion entered into the AM Product Foundry Agreement ("Foundry Agreement") whereby FSL agreed to provide certain foundry services for Spansion in Japan related to AM Products as such term is defined in the Stock Purchase Agreement ("SPA") among FSL, Nihon Spansion Limited, and Spansion dated April 30, 2013.  A true and correct copy of a public version of the Foundry Agreement is attached as **Exhibit B** to the Olson Declaration and incorporated herein.  A true and correct copy of a public version of the SPA is attached as **Exhibit C** to the Olson Declaration and incorporated herein.

10.     The foundry services provided by FSL to Spansion involved the manufacture of semiconductor wafers for the AM Products.  (Olson Decl. Ex. A ¶ 16.)

11.     In 2016, Spansion assigned its rights and responsibilities under the Foundry Agreement to Cypress as part of Supplement 7 to the Foundry Agreement.  (*Id.*)  A true and correct copy of Supplement 7 to the Foundry Agreement (minus its exhibits) is attached as **Exhibit D** to the Olson Declaration and incorporated herein.

1      12.      Section 20.4 of the Foundry Agreement provides:

2            20.4      Governing Law.  This Agreement shall be governed by and
3      construed in accordance with the laws of Japan without giving
       effect to any choice or conflict of law provision or rule that would
       cause the application of the laws of any jurisdiction other than
4      Japan.

5  (Olson Decl. Ex. B at § 20.4.)

6      13.      Section 20.5 of the Foundry Agreement and Section 11.10 of the SPA provide for

7  arbitration of any dispute, difference, controversy or claim arising in connection with or related or

8  incidental to, or question occurring under, the Foundry Agreement or the subject matter of the

9  Foundry Agreement.  (Olson Decl. Ex. B at § 20.5 and Ex. C at § 11.10.)

10      14.      Section 20.5 of the Foundry Agreement provides:

11            20.5      Dispute Resolution.  Any dispute, difference, controversy or
       claim arising in connection with or related or incidental to, or
12     question occurring under, this Agreement or the subject matter
       hereof shall be resolved in accordance with Section 11.10 of the
13     Stock Purchase Agreement.

14  (Olson Decl. Ex. B at § 20.5.)

15      15.      Section 11.10 of the SPA provides in relevant part:

16            Section 11.10  Arbitration.

17            (a)      Any dispute, controversy or claim arising in
       connection with or related or incidental to, or question occurring
18     under, this Agreement and any other Transaction Agreement or the
       subject matter hereof shall be finally settled under the Commercial
19     Arbitration Rules (the "Rules") of the Japan Commercial
       Arbitration Association (the "Arbitration Organization"), unless
20     otherwise agreed, by an arbitral tribunal composed of one (1)
       arbitrator appointed by agreement of the Buyer and the Seller[1] in
21     accordance with the Rules. . . .

22            (b)      The arbitrator shall apply the laws of Japan, shall not
       have the authority to add to, detract from, or modify any provision
23     hereof and shall not award punitive damages to any injured Party.
       A decision by the arbitrator shall be final, conclusive and binding.
24     The arbitrator shall deliver a written and reasoned award with
       respect to the dispute to each of the parties to the dispute,
25     difference, controversy or claim, who shall promptly act in
       accordance therewith.  Any arbitration proceeding shall be held in
26     Tokyo, Japan.

27

28     [1] The preamble of the SPA defines "Buyer" and "Seller" as Nihon Spansion Limited and
       FSL, respectively.  (Olson Decl. Ex. C at page 1.)

PETITION FOR ORDER COMPELLING ARBITRATION
CASE NO. 5:22-mc-80313
TK-884359

4

1  (Olson Decl. Ex. C at § 11.10.)

2      16.    The Foundry Agreement expired on or about March 31, 2020.  (Olson Decl. ¶ 7.)

3  Section 15.4 of the Foundry Agreement provides that the arbitration provision in Section 20.5 of

4  the Foundry Agreement shall survive the termination or expiration of the Foundry Agreement.

5  (Olson Decl. Ex. B at § 15.4.)

6  **The Settlement Agreement**

7      17.    On February 25, 2020, then United States District Judge Lucy H. Koh found that

8  Cypress and FSL "are bound by an agreement to arbitrate in Tokyo, Japan under the rules of the

9  Japan Commercial Arbitration Association" with respect to a dispute involving the foundry

10  services provided by FSL to Cypress.  *Cypress Semiconductor Corp. v. Fujitsu Semiconductor*

11  *Ltd.*, Case No. 20-CV-00193-LHK, 2020 U.S. Dist. LEXIS 32907, at *3, *8 (N.D. Cal. Feb. 25,

12  2020) ("the parties contracted to arbitrate in Tokyo, Japan, under the rules of the Japan

13  Commercial Arbitration Association, and under the laws of Japan").

14      18.    On March 11, 2020, Cypress commenced an arbitration against FSL captioned

15  *Cypress Semiconductor Corporation v. Fujitsu Semiconductor Limited*, Japan Commercial

16  Arbitration Association ("JCAA") Arbitration Case No. 20-06, Tokyo ("JCAA Arbitration"), with

17  respect to the dispute in *Cypress Semiconductor Corp. v. Fujitsu Semiconductor Ltd.*, Case

18  No. 20-CV-00193-LHK (N.D. Cal.) ("Litigation").  A true and correct copy of Cypress's request

19  for arbitration in the JCAA Arbitration (minus its exhibits) is attached as **Exhibit E** to the Olson

20  Declaration and incorporated herein.

21      19.    On June 4, 2020, FSL asserted on page 9 of its answer in the JCAA Arbitration

22  that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Olson Decl. ¶ 7.)

23  A true and correct copy of FSL's answer in the JCAA Arbitration is attached as **Exhibit F** to the

24  Olson Declaration and incorporated herein.

25      20.    On December 22, 2020, FSL and Cypress entered into a Settlement Agreement

26  pursuant to which the parties ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮ (Olson Decl. ¶ 7.)  A true and correct copy of the

1   Settlement Agreement (minus its Appendices) is attached as **Exhibit G** to the Olson Declaration

2   and incorporated herein.

3        21.   

4

5

6

7

8

9

10

11

12   (Olson Decl. Ex. G at § 4.d.)

13        22.

14

15

16

17   (Olson Decl. Ex. G at § 5.)

18        23.

19

20

21

22

23

24

25

26

27   _____

28   Ex. G at § 1.d and pages 11.)                                    . (Olson Decl.

1

2

3

4   (Olson Decl. Ex. G at § 6.)

5        24.    As set forth in further detail below, a dispute, difference, controversy, or claim has

6   arisen in connection with or related or incidental to each of the Foundry Agreement and the

7   Settlement Agreement, and the respective subject matters thereof.

8                         **PROCEDURAL HISTORY**

9        25.    On or about May 23, 2022, Cypress filed the Cross-Complaint against FSL in the

10  Superior Court of the State of California for the County of Santa Clara.  (Olson Decl. Ex. A.)

11       26.    The Cross-Complaint alleges a single purported cause of action against FSL for

12  intentional interference with contract based on the following allegations (emphasis added):

13      16.  In 2013, FSL and Spansion entered into an **AM Product**
14  **Foundry Agreement** under which FSL manufactured wafers for
    Spansion.  Wafers are a thin slice of semiconductor material used in
    fabricating integrated circuits; wafers function as the base on which
15      integrated circuits are embedded.

16      17.  In 2016, Spansion validly assigned to Cypress its rights and
    responsibilities under the **Foundry Agreement** as part of an
17      amendment to that agreement.

18      18.  Over the course of the **Foundry Agreement**, FSL continuously
    raised its prices.  While Cypress felt that these prices were unfair,
19      Cypress did not believe it had a choice but to maintain its
    relationship with FSL.  Changing wafer manufacturers is an
20      expensive and time-consuming process.  Setting up a new foundry
    requires the creation of numerous custom parts, and the quality
21      assurance process for setting up a new manufacturing line is
    arduous.

22
                  * * * *
23
    22.  . . . FSL and [Fujitsu Electronics Inc. ("FEI")] leveraged FSL's
24      position as wafer manufacturer for Cypress and threatened to

25      unless Cypress made concessions in an amended Distributor
    Agreement with FEI.
26
    23.  . . . FSL attempted to
27
                           to
28

Cypress's keeping FEI as a Distributor through March 31, 2020, which Cypress refused to agree.

24. . . . And, while FSL allowed Cypress to keep the change in control termination provision in the agreement, FSL expressly conditioned the ████████████████████████████████████████

* * * *

63. . . . FSL, which had a separate contractual relationship providing wafers to Cypress as a semiconductor fabrication facility, used its market power [under the **Foundry Agreement**] to threaten to ████████████████████████ if Cypress did not agree to remove the "for convenience" termination provision in the Distributor Agreement as part of Amendment 1. FSL further ████████████████████████████████████ terminated the Distributor Agreement with FEI for a "material change in management, ownership, or control [of FEI]."

(Olson Decl. Ex. A ¶¶ 16-18, 22-24, and 63.)

27.    On August 16, 2022, outside counsel for Cypress wrote an email to outside counsel for FSL asking outside counsel for FSL to accept service of the Cross-Complaint on behalf of FSL. A true and correct copy of the August 16, 2022 email is attached as **Exhibit H** to the Olson Declaration and incorporated herein.

28.    On August 22, 2022, outside counsel for FSL wrote back to outside counsel for Cypress and demanded that Cypress withdraw the purported cause of action asserted against FSL in the Cross-Complaint for multiple reasons, including the mandatory arbitration provisions of the Foundry Agreement. A true and correct copy of the August 22, 2022 letter is attached as **Exhibit I** to the Olson Declaration and incorporated herein.

29.    Cypress refused, and continues to refuse, to withdraw the purported cause of action asserted against FSL in the Cross-Complaint. (Olson Decl. ¶ 11.) Cypress served the Cross-Complaint on FSL through the Hague Service Convention on or about October 18, 2022, thus necessitating this Petition for Order Compelling Arbitration. (*Id.*)

## LEGAL STANDARDS

30.    Article II of the New York Convention, 1970 U.S.T. LEXIS 115, provides:

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in

respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2.  The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams.

3.  The court of a Contacting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

31.    Section 201 of the FAA, 9 U.S.C. § 201, provides:

**Section 201.  Enforcement of Convention**.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.

32.    Section 202 of the FAA, 9 U.S.C. § 202, provides in relevant part:

**Section 202.  Agreement or award falling under the Convention**

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.

33.    Section 206 of the FAA, 9 U.S.C. § 206, provides in relevant part:

**Section 206.  Order to compel arbitration; appointment of arbitrators**

A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.

34.    Pursuant to Section 206 of the FAA, 9 U.S.C. § 206, this Court may direct that arbitration be held in Tokyo, Japan, as required by the arbitration agreement in the Foundry Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g., Chloe Z Fishing Co.*, 109 F. Supp. 2d at 1261, n.24 (compelling arbitration in London pursuant to 9 U.S.C. § 206).

35.    Under Chapter I, Article 1, and Chapter IV, Article 23, of the Arbitration Law (Law No. 138 of August 1, 2003) of Japan, an arbitral tribunal has the power to rule on its own jurisdiction where the place of arbitration is in Japan.  Nonaka Decl. ¶ 2.

36.     Chapter I, Article 1, of the Arbitration Law (Law No. 138 of August 1, 2003) of Japan provides:

> **Article 1.  (Purpose)**
>
> Arbitration procedures of which the place of arbitration is in Japan and procedures carried out by the court for an arbitration procedure shall be governed by the provisions of this Act in addition to the provisions of other laws and regulations.

(Nonaka Decl. ¶ 2 and Ex. A thereto.)

37.     Chapter IV, Article 23, of the Arbitration Law (Law No. 138 of August 1, 2003) of Japan provides in relevant part:

> **Article 23.  (Competence of Arbitral Tribunal to Rule on Its Jurisdiction)**
>
> (1)  An Arbitral Tribunal may rule on its own jurisdiction (meaning the authority to carry out proceedings in an arbitration procedure and to make an Arbitral Award . . .), including a ruling on any allegations on the existence or validity of an Arbitration Agreement.

(Nonaka Decl. ¶ 2 and Ex. A thereto.)

38.     Article 47.1 of the JCAA Rules provides:

> **Article 47.  Competence of Arbitral Tribunal to Determine Jurisdiction**
>
> 1  The arbitral tribunal may make a determination on any objection as to the existence or validity of an arbitration agreement and any other matters regarding its own jurisdiction.

(Nonaka Decl. ¶ 3 and Ex. B thereto.)

39.     The Supreme Court has declared, "agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Article II of the New York Convention imposes a mandatory duty on the courts of a Contracting State to recognize and enforce an agreement to arbitrate unless the agreement is "null and void, inoperative or incapable of being performed." 9 U.S.C. § 201, note, art. II(3); *Riley*, 969 F.2d at 959.  By its terms, FAA leaves no place for discretion by a district court, but instead "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*,

470 U.S. at 218; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

40.      Federal policy generally favors arbitration of international disputes. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) (holding that federal policy favors arbitration agreements); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516-517 (1974). Congress' main concern in passing the FAA was to enforce private agreements, a concern which requires rigorous enforcement of agreements to arbitrate. *Dean Witter*, 470 U.S. at 221.

41.      The "emphatic federal policy in favor of arbitral dispute resolution applies with special force in the field of international commerce." *Mitsubishi Motors*, 473 U.S. at 631; *Simula*, 175 F.3d at 720, 726; *Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1534 (9th Cir. 1987). The "clear weight of authority holds that the most minimal indication of the parties' intent to arbitrate must be given full effect, especially in international disputes." *Republic of Nicaragua*, 937 F.2d at 478; *accord Simula*, 175 F.3d at 722.

42.      "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 ("federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement").

43.      "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. at 24-25; *accord United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (court may only deny arbitration if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage").

44.      The preference for arbitration is particularly strong when the arbitration clause is broad. *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986). Clauses requiring arbitration of claims "arising out of or relating to" or "arising in connection with" a contract are universally recognized as "broad and far reaching." *Chiron Corp. v. Ortho*

*Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *accord Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967); *Simula,* 175 F.3d at 721.

45.    To require arbitration under such a broad arbitration clause, the factual allegations raised "need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula*, 175 F.3d at 721, *quoting Mitsubishi Motors*, 473 U.S. at 624 n.13.  Where the arbitration clause is broad in scope, "[t]he burden . . . falls upon the party contesting arbitrability to show how the language of the arbitration clause excludes a dispute from the clause's purview." *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1077-80 (9th Cir. 2002), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).  "[I]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 650.

46.    Tort claims are arbitrable under broad arbitration clauses.  *See, e.g., Chloe Z Fishing Co.*, 109 F. Supp. 2d at 1240, 1257, 1261 (S.D. Cal. 2000) (compelling arbitration of claims for unfair business practices and intentional interference with contractual relations); *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 989 (N.D. Cal. 1996) ("arbitration clause in the parties' product distribution agreement was broad enough to cover allegations of conspiracy to destroy one party's business") (also compelling arbitration of intentional infliction of emotional distress claims under same agreement).

47.    "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019), *quoting Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (quotations omitted).

48.    "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at

529-30 ("a court may not decide an arbitrability question that the parties have delegated to an arbitrator").

## ARGUMENT

49.     Cypress and FSL expressly agreed to a broad arbitration clause in the Foundry Agreement.  Under this broad arbitration clause, Cypress and FSL agreed to arbitrate their disputes, differences, controversies, and claims in Tokyo, Japan, under Japanese law and in accordance with the JCAA Rules.

50.     █████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████

51.     The Foundry Agreement falls under the New York Convention, ████████████
████████████████████.  When asked to enforce an agreement under the New York Convention, a court may not review the merits of the dispute but must limit its inquiry to deciding the following four questions:

> (1) Is there an agreement in writing to arbitrate the subject of the dispute?  Convention, Articles II(1), II(2).
>
> (2) Does the agreement provide for arbitration in the territory of a signatory of the Convention?  Convention, Articles I(1), I(3).
>
> (3) Does the agreement arise out of a legal relationship[,] whether contractual or not, which is considered as commercial? Convention, Article I(3)
>
> (4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?  9 U.S.C. § 202.

*Prograph*, 928 F. Supp. at 988, *citing Ledee v. Ceramiche Ragno*, 684 F. 2d 184, 186-87 (1st Cir. 1982); *Balen v. Holland Am. Line, Inc*., 583 F.3d 647, 654-55 (9th Cir. 2009) (citing above four factors to determine whether to enforce an arbitration agreement under the Convention); *Gilbert v. Bank of Am*., Case No. C 13-01171 JSW, 2015 U.S. Dist. LEXIS 46120, at *10 (N.D. Cal. Apr. 8, 2015); *SB Liquidation Trust v. AU Optronics Corp. (In re TFT-LCD Antitrust Litig.)*, Case No. M 07-1827 SI MDL No. 1827, 2011 U.S. Dist. LEXIS 106268, at *17-18 (N.D. Cal.

1   Sept. 19, 2011); *Twi Lite Int'l v. Anam Pac. Corp.*, Case No. C-96-2323 SI, 1996 U.S. Dist.

2   LEXIS 16060, at *10 (N.D. Cal. Oct. 24, 1996).  "If these questions are answered in the

3   affirmative, a court is required to order arbitration" unless the court finds the agreement to be null

4   and void, inoperative, or incapable of being performed.  Article II, § 3, of the New York

5   Convention; *Riley*, 969 F.2d at 959; *SB Liquidation Trust*, 2011 U.S. Dist. LEXIS 106268, at *18;

6   *Prograph*, 928 F. Supp. at 988; *Twi Lite Int'l.*, 1996 U.S. Dist. LEXIS 16060, at *10.

7       52.   The Foundry Agreement (a) is in writing, (b) contains a broad arbitration clause

8   providing for arbitration in the territory of a signatory to the New York Convention (*i.e.*, Japan),

9   (c) arises out of a commercial relationship, and (d) includes a party, FSL, which is not a U.S.

10  citizen and has its principal place of business in Japan.  ██████████████████████

11  ████████████████████████████████████████

12  ████████████████████████████████████████

13  ████████████████████████████████████████

14  ███   Therefore, Article II, § 3, of the New York Convention "imposes a mandatory duty" on

15  this Court to grant FSL's Petition for Order Compelling Arbitration.  *Prograph*, 928 F. Supp. at

16  988 (N.D. Cal. 1996), *citing Riley*, 969 F.2d at 959; *Twi Lite Int'l*, 1996 U.S. Dist. LEXIS 16060,

17  at *9-10.

18      53.   The presence of a delegation clause in an arbitration agreement delegating to the

19  arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular

20  controversy or whether the arbitration agreement is enforceable at all, "further limits the issues

21  that a court may decide."  *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029-30 (9th Cir.

22  2022) ("a valid—*i.e.*, enforceable—delegation clause commits to the arbitrator nearly all

23  challenges to an arbitration provision") ("if the parties did form an agreement to arbitrate

24  containing an enforceable delegation clause, all arguments going to the scope or enforceability of

25  the arbitration provision are for the arbitrator to decide in the first instance"); *Portland GE v.

26  Liberty Mut. Ins. Co.*, 862 F.3d 981, 986 n.3 (9th Cir. 2017); *Oracle Am., Inc. v. Myriad Grp.

27  A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013).  Under applicable Japanese law and the JCAA Rules,

28

1    questions of arbitrability, such as whether an arbitration agreement covers a particular dispute, are

2    delegated to the arbitrator, and not a court, to decide in the first instance.  (Nonaka Decl. ¶¶ 2-3.)

3         54.    Courts have found such delegation when the parties have incorporated by

4    reference the rules of the American Arbitration Association ('AAA'), which state in relevant part

5    that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any

6    objections with respect to the . . . validity of the arbitration agreement." *Brennan. v. Opus Bank*,

7    796 F.3d 1125, 1130-31 (9th Cir. 2015) (arbitration agreement which provides for arbitration

8    under AAA rules, one of which provides that the "arbitrator shall have the power to rule on his or

9    her own jurisdiction, including any objections with respect to the . . . validity of the arbitration

10   agreement," constitutes "clear and unmistakable evidence that contracting parties agreed to

11   arbitrate arbitrability") (applying test set forth in *First Options of Chicago, Inc. v. Kaplan*,

12   514 U.S. 938, 944 (1985); *Galilea, LLC v. AGCS Marine Ins. Co*., 879 F.3d 1052, 1061-62

13   (9th Cir. 2018) (same); *Portland GE*, 862 F.3d at 985 (9th Cir. 2017) (arbitration agreement

14   which provides for arbitration under ICC rules delegates gateway questions of arbitrability, such

15   as whether the agreement covers a particular controversy, to the arbitrator); *Viewsonic Corp. v.*

16   *Chunghwa Picture Tubes, LTD. (In re Cathode Ray Tube (Crt) Antitrust Litig.)*, MDL No. 1917;

17   Case No. C-07-5944-SC; Case No. 3:14-cv-02510, 2014 U.S. Dist. LEXIS 175521, at *104-09,

18   n.4 (N.D. Cal. Dec. 18, 2014) (arbitration agreement which provides for arbitration under the

19   AAA rules and the JCAA Rules delegates gateway questions of arbitrability, such as whether the

20   agreement covers a particular controversy, to the arbitrator).

21        55.    The court in *Viewsonic* relied on then JCAA Rule 41, which is identical to current

22   JCAA Rule 47.1, providing:  "The arbitral tribunal may make a determination on any objection as

23   to the existence or validity of an arbitration agreement and any other matters regarding its own

24   jurisdiction." *Viewsonic*, 2014 U.S. Dist. LEXIS 175521, at *104-09, n.4 ("the Court finds that

25   by incorporating the rules of procedure of the AAA and JCAA, the parties 'clearly and

26   unmistakably' provided for arbitration of arbitrability, and as a result Panasonic's motion [to

27   compel arbitration] is GRANTED").

28

56.     Therefore, any dispute that Cypress may wish to raise with respect to the arbitrability of its purported cause of action for intentional interference with contract against FSL set forth in the Cross-Complaint, *i.e.*, whether the arbitration clause in the Foundry Agreement covers the dispute, will be for the JCAA arbitrator, and not this Court, to decide. *Henry Schein*, 139 S. Ct. at 529-31. This is because the Foundry Agreement requires submission of "any dispute, difference, controversy, or claim" to arbitration under the JCAA Rules and Japanese law which each assign the arbitrator initial responsibility to determine issues of arbitrability. (Olson Decl. Ex. B at §§ 20.4-20.5 and Ex. C at § 11.10; Nonaka Decl. ¶¶ 2-3 and Exs. A and B thereto.)

57.     ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

58.     Pursuant to the U.S. Supreme Court's decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019), any dispute that Cypress may wish to raise with respect to the arbitrability of its purported cause of action for intentional interference with contract against FSL set forth in the Cross-Complaint, *e.g.*, whether the arbitration clause in the Foundry Agreement covers the dispute, will be for the JCAA arbitrator, and not this Court, to decide. Nevertheless, for completeness, FSL sets forth below some of the reasons why Cypress's purported cause of action for intentional interference with contract asserted against FSL in the Cross-Complaint is covered by the broad arbitration clause in the Foundry Agreement ████ ███████████████████████████████████.

59.     Cypress's purported cause of action for intentional interference with contract asserted against FSL in the Cross-Complaint is covered by the broad arbitration clause in the Foundry Agreement because such cause of action is a "dispute, difference, controversy or claim arising in connection with or related or incidental to, or question occurring under [the Foundry]

Agreement or the subject matter [of the Foundry Agreement]." (Olson Decl. Ex. B at § 20.5 and Ex. C at § 11.10.)

60.    The Cross-Complaint cites or refers to the subject matter of the Foundry Agreement at least eight times.  (Olson Decl. Ex. A ¶¶ 16-18, 22-24, and 63.)  The gravamen of Cypress's purported cause of action for intentional interference with contract asserted against FSL in the Cross-Complaint is that FSL allegedly used its "market power" under the Foundry Agreement "to threaten to ███████████████████████████ if Cypress (a) "did not agree to remove the 'for convenience' termination provision in the Distributor Agreement as part of Amendment 1" and (b) "terminated the Distributor Agreement with FEI for a 'material change in management, ownership, or control [of FEI].'"  (Olson Decl. Ex. A ¶ 63.)

61.    Cypress's purported cause of action for intentional interference with contract qualifies as a "dispute, difference, controversy or claim arising in connection with or related or incidental to, or question occurring under [the Foundry] Agreement" because, among other reasons, the purported cause of action arises in connection with, is related to, and is incidental to, FSL's performance, and ███████████████████, under the Foundry Agreement for FSL's foundry services.  (Olson Decl. Ex. A ¶¶ 16-18, 22-24, and 63, Ex. B at § 20.5, and Ex. B at § 11.10.)

62.    Cypress's purported cause of action for intentional interference with contract also qualifies as a "dispute, difference, controversy or claim arising in connection with or related or incidental to, or question occurring under . . . the subject matter [of the Foundry Agreement]." (Olson Decl. Ex. D at § 20.5, and Ex. B at § 11.10)  The subject matter of the Foundry Agreement is the foundry services that FSL provided to Cypress and the gravamen of the purported cause of action for intentional interference with contract asserted against FSL in the Cross-Complaint is that FSL allegedly used its "market power" under the Foundry Agreement "to threaten ███████████████████████████" for such foundry services.  (Olson Decl. Ex. A ¶¶ 16-18, 22-24, and 63.)

63. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ (Olson Decl. Ex. G at § 6.)

This is because, as set forth below, one of FSL's defenses to Cypress's purported cause of action

for intentional interference with contract is based on ████████████████████████████

████████.

64.    Cypress alleges in its Cross-Complaint that FSL's alleged threats and interference

occurred no later than February 2018 when Cypress entered into Amendment 1 to the Distributor

Agreement.  (Olson Decl. Ex. A ¶¶ 61 and 63.)

65.    On June 4, 2020, FSL asserted on page 9 of its answer in the JCAA Arbitration

that ████████████████████████████████████ (Olson Decl. ¶ 7

Ex. F at page 9.) ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ (Olson Decl. Ex. G at § 4.d.)

66.    ████████████████████████████████████████

██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

(Olson Decl. Ex. G at § 4.d.)

67.    Therefore, the issue of whether Cypress has already ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Olson Decl. Ex. G at § 6.)

## CONCLUSION

For all of the foregoing reasons, FSL prays for an order compelling arbitration of the dispute, difference, controversy, or claim set forth in Cypress's purported cause of action against FSL in the Cross-Complaint in accordance with the broad arbitration clause in the Foundry Agreement ███████████████████████████████████████████ pursuant to Article II of the New York Convention and 9 U.S.C. § 206, and for such other and further relief as the Court deems proper.


Dated: November 18, 2022          Respectfully submitted,

MORRISON & FOERSTER LLP

By:  _____
          A.  Max Olson


Attorneys for Petitioner
FUJITSU SEMICONDUCTOR LIMITED