UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FUJITSU SEMICONDUCTOR LIMITED,<br><br>          Plaintiff,<br><br>     v.<br><br>CYPRESS SEMICONDUCTOR CORPORATION,<br><br>          Defendant. | Case No.  22-mc-80313-VKD<br><br>**ORDER GRANTING PETITION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 17 |

Fujitsu Semiconductor Limited ("FSL") petitions the Court for an order compelling arbitration of a dispute between it and respondent Cypress Semiconductor Corporation ("Cypress") currently pending in state court.[1]  Dkt. No. 17.  Cypress opposes the petition.  Dkt. No. 23.  On April 11, 2023, the Court held a hearing on FSL's petition.[2]  Dkt. No. 32.  For the reasons discussed below, the Court grants FSL's petition to compel arbitration.

## I. BACKGROUND[3]

### A. The Parties' Dispute

FSL is a Japanese corporation with a registered office in Japan.  Among other things, FSL provides semiconductor manufacturing, or foundry, services.  Dkt. No. 17 at 1.  In 2013, FSL and Spansion LLC ("Spansion") entered an agreement ("Foundry Agreement") pursuant to which FSL

---

[1] *Kaga FEI Co., Ltd. v. Cypress Semiconductor Corp.*, Case No. 19-CV-359055, filed in the Superior Court of California, County of Santa Clara.

[2] FSL and Cypress have consented to magistrate judge jurisdiction. Dkt. Nos. 10, 16; 28 U.S.C. § 636.

[3] Unless otherwise stated, the facts are undisputed and are taken principally from FSL's amended petition and supporting papers.  *See* Dkt. No. 17.

1  agreed to manufacture microchip wafers for Spansion.[4]  *Id.* at 3.  In 2015, Spansion merged with

2  respondent Cypress, and in 2016 Spansion assigned its rights and obligations under the Foundry

3  Agreement to Cypress.  Dkt. No. 18-5, Ex. E § 2.

4         In 2015, Cypress also entered an agreement ("Distributor Agreement") with a subsidiary of

5  FSL, Fujitsu Electronics Inc. ("FEI").  Dkt. No. 17 at 4.  In 2018, FEI was acquired by Kaga

6  Electronics Co., Ltd. ("Kaga").  Dkt. No. 23 at 9.  After Kaga acquired FEI, Cypress terminated

7  the Distributor Agreement.  Dkt. No. 23 at 9.

8         On November 25, 2019, Kaga-FEI sued Cypress in California state court alleging breach

9  of the Distributor Agreement and breach of the covenant of good faith and fair dealing.  *See* Dkt.

10  No. 23-1, Ex. B.  On May 23, 2022, Cypress filed a cross-complaint against Kaga-FEI and named

11  FSL as a cross-defendant.  Dkt. No. 17 at 8.  Cypress alleges that FSL tortiously interfered with

12  Cypress's rights under the Distributor Agreement, and that, but for FSL's conduct, Kaga-FEI

13  would not have sued Cypress after Cypress terminated the Distributor Agreement.[5]  *Id.* at 8-9.  On

14  November 23, 2022, Cypress filed an amended cross-complaint asserting additional claims against

15  FSL.  *See* Dkt. No. 23-1, Ex. B.

16         FSL now petitions for an order requiring Cypress to arbitrate all state court claims against

17  it pursuant to the United Nations Convention on The Convention on the Recognition and

18  Enforcement of Foreign Arbitral Awards, Sept. 30, 1970, 21 U.S.T. 2517, and the Federal

19  Arbitration Act ("FAA"), 9 U.S.C. § 206.

20  **II.  LEGAL STANDARD**

21         A party seeking to compel arbitration must establish that a valid agreement to arbitrate

22  exists.  *Ashbey v. Archstone Property Management, Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

23  For arbitration agreements governed by the Convention, a petitioner must show that "(1) there is

---

[4] The Foundry Agreement cross-referenced FSL and Spansion's "Stock Purchase Agreement." *See* Dkt. No. 17-5, Ex. D.

[5] During briefing on the petition to compel arbitration, FSL concurrently filed a motion to sever and stay Cypress' claims against it in the state court action, pursuant to California Code of Civil Procedure § 1281.4.  *See* Dkt. No. 23-1, Ex. B.  On April 13, 2023, the state court granted FSL's motion.  *See* Dkt. No. 34, Ex. A at 6-7.

1  an agreement in writing within the meaning of the Convention; (2) the agreement provides for
2  arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal
3  relationship, whether contractual or not, which is considered commercial; and (4) a party to the
4  agreement is not an American citizen . . . ." *Balen v. Holland Am. Line Inc.,* 583 F.3d 647, 654–
5  55 (9th Cir.2009) (quoting *Bautista v. Star Cruises,* 396 F.3d 1289, 1294–95 (11th Cir. 2005)).

## III.  DISCUSSION

Cypress opposes FSL's petition on the ground that there is no arbitration agreement between the parties, and even if there were, the agreement does not encompass Cypress's equitable claims against FSL. In addition, Cypress argues that the Court should abstain from exercising jurisdiction in this matter, in favor of the state court, under the *Colorado River* doctrine.

### A.  Agreement to Arbitrate

FSL contends that it has an agreement to arbitrate with Cypress that encompasses Cypress's claims against FSL in the state court action. FSL principally relies on an arbitration clause in the parties' Foundry Agreement, which cross-references a provision in the Stock Purchase Agreement. Dkt. No. 17-4, Ex. C. Section 20.5 of the Foundry Agreement provides:

> 20.5 Dispute Resolution. Any dispute, difference, controversy or claim arising in connection with or related or incidental to, or question occurring under, this Agreement or the subject matter hereof shall be resolved in accordance with Section 11.10 of the Stock Purchase Agreement.

Section 11.10 of the Stock Purchase Agreement provides in relevant part:

> Section 11.10 Arbitration. (a) Any dispute, controversy or claim arising in connection with or related or incidental to, or question occurring under, this Agreement and any other Transaction Agreement or the subject matter hereof shall be finally settled under the Commercial Arbitration Rules (the "Rules") of the Japan Commercial Arbitration Association (the "Arbitration Organization"), unless otherwise agreed, by an arbitral tribunal composed of one (1) arbitrator appointed by agreement of the Buyer and the Seller in accordance with the Rules. . . .
>
> (b) The arbitrator shall apply the laws of Japan, shall not have the authority to add to, detract from, or modify any provision hereof and shall not award punitive damages to any injured Party. A decision by the arbitrator shall be final, conclusive and binding. The

3

> arbitrator shall deliver a written and reasoned award with respect to the dispute to each of the parties to the dispute, difference, controversy or claim, who shall promptly act in accordance therewith. Any arbitration proceeding shall be held in Tokyo, Japan.

Dkt. No. 17-5, Ex. D. FSL contends that by operation of these provision, Cypress's claims against it must be resolved in Japan under the Commercial Arbitration Rules of the Japan Commercial Arbitration Association ("JCAA"). Dkt. No. 17 at 5-6, 19.

In petitioning for an order to compel arbitration, FSL relies on Article II of the Convention, to which the United States and Japan are signatories. Dkt. No. 17 at 2; 21 U.S.T. 2517. Article II provides:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams.
>
> 3. The court of a Contacting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

21 U.S.T. 2517. The Convention's provisions are implemented by the FAA at 9 U.S.C. §§ 201–08. "An arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention." 9 U.S.C. § 202. "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. "The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *Id*. "A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

4

Cypress responds that the arbitration provisions of the Foundry Agreement do not apply and cannot support FSL's petition Cypress's claims against FSL are governed by Section 16.10 in the Distributor Agreement. Dkt. No. 23 at 13-14. Specifically, Cypress argues that because the Distributor Agreement was signed after the Foundry Agreement and contains an integration clause, the dispute resolution provision of the Distributor Agreement necessarily supersedes the arbitration provision of the Foundry Agreement. *Id.* at 14.

Cypress's argument is not persuasive. FSL is not a party to the Distributor Agreement as a whole, or even to the dispute resolution provision on which Cypress relies. Rather, the parties to the Distributor Agreement are *Cypress and FEI*. The Distributor Agreement refers to FEI as "Distributor" and as the party with whom Cypress has contracted. *See* Dkt. No. 17-3, Ex. B at Ex. A, preamble ("This Distributor Agreement . . . is entered into as of September 10, 2015 . . . by and between Cypress . . . and Fujitsu Electronics Inc."); *id.* § 16.1 ("This Agreement constitutes the entire agreement between Distributor and Cypress and supersedes all previous agreements, negotiations, representations and promises."); *id.* § 16.3 (providing for notices to "Cypress" and "Distributor" only). While FSL and Spansion also signed the Distributor Agreement, their signatures are "with respect only to the termination of the Spansion Distributor Agreements as set forth in Section 15.5 above." *Id.* at signature page, and § 15.5. Thus, the clear and unambiguous text of the Distributor Agreement makes plain that FSL and Cypress did not agree to be bound generally by any of the other provisions of the agreement, including the dispute resolution provision in Section 16.10.

Furthermore, the Foundry Agreement did not terminate after Spansion merged with Cypress. And Cypress does not dispute that it agreed to be bound by the Foundry Agreement in 2016 when it signed Supplement 7 to that agreement on October 12, 2016. Dkt. No. 29 at 1. Supplement 7 states: "Cypress hereby assumes the Foundry Agreement including all Spansion's rights and obligations under the Foundry Agreement. All references to Spansion in the Foundry Agreement shall be read and construed as references to Cypress. . . . Cypress agrees to perform the Foundry Agreement and be bound by the terms and conditions under the Foundry Agreement as if Cypress were the original party to the Foundry Agreement." Dkt. No. 18-5, Ex. E

5

1  § 2. Supplements 8 and 9 to the Foundry Agreement, signed by Cypress on April 17, 2017 and
2  April 10, 2018, respectively, both state: "Except as expressly modified or amended by this
3  Supplement [8 or 9], all terms and conditions of the Foundry Agreement remain in full force and
4  effect and are not altered or changed by this Supplement [8 or 9]." *See, e.g.*, Dkt. No. 18-6, Ex. F
5  § 5. The Foundry Agreement expired in 2020, but the parties do not dispute that the arbitration
6  provision in Section 20.5 survives that expiration. Dkt. No. 17-4, Ex. C at § 15.4.

The Court concludes that FSL has established the existence of a valid agreement to arbitrate.[6]

### B.  Delegation of Arbitrability Question

Cypress argues that even if the Foundry Agreement's arbitration provision applies, its claim against FSL for violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., is not arbitrable because the arbitration provision carves out all claims for "equitable relief." Dkt. No. 23 at 20-22. FSL argues that the parties have delegated the question of arbitrability of the underlying dispute to the arbitrator, and in any event, Cypress's UCL claim does not seek equitable relief. Dkt. No. 17 at 19.

The Foundry Agreement contains no express delegation of authority to the arbitrator to decide whether claims are arbitrable. *See* Dkt. No. 36 at 8:17-19; Dkt. No. 23 at 23. In these circumstances, the question of arbitrability is an issue to be decided by the Court, *unless* there is "clear and unmistakable evidence" that the parties agreed to have the arbitrator decide the question. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). Where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules indicating that the arbitrator should decide questions of arbitrability, incorporation of such rules satisfies the requirement for clear and unmistakable evidence. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that incorporation of the American Arbitration Association

---

[6] FSL argues that a 2020 settlement agreement between FSL and Cypress also contains an enforceable arbitration clause. Dkt. No. 23 at 21. For the reasons explained in Cypress's opposition and discussed at the hearing, the Court is not persuaded that the arbitration provision in the settlement agreement has anything to do with Cypress's state court claims against FSL. In any event, it is unnecessary for the Court to resolve the parties' dispute regarding the applicability of the 2020 settlement agreement.

rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability); *Oracle Am., Inc.*, 724 F.3d at 1074 ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

Here, FSL argues that the Foundry Agreement contains clear and unmistakable evidence that the parties delegated the question of arbitrability to the arbitrator because that agreement incorporates the rules of the JCAA and Japanese law. Dkt. No. 17 at 20-21. FSL contends that the "JCAA Rules and Japanese law . . . each delegate initial responsibility to the arbitrator to determine issues of arbitrability." *Id.* at 21. Cypress challenges FSL's interpretation of the JCAA rules and Japanese law and argues that incorporation of the rules is not clear and unmistakable evidence of delegation. Dkt. No. 23 at 22-25.

Article 47.1 of the JCAA Rules provides: "The arbitral tribunal may make a determination on any objection as to the existence or validity of an arbitration agreement and any other matters regarding its jurisdiction." Dkt. No. 17-15, Ex. B at 21. Article 23 of Japan's Arbitration Act provides, in part:[7]

> (1) An Arbitral Tribunal may rule on its own jurisdiction (meaning the authority to carry out proceedings in an arbitration procedure and to make an Arbitral Award . . .), including a ruling on any allegations on the existence or validity of an Arbitration Agreement.
>
> (2) In an arbitration procedure, an allegation that an Arbitral Tribunal does not have jurisdiction shall be made promptly . . . .
>
> (4) If the allegation set forth in paragraph (2) has been made lawfully, an Arbitral Tribunal shall rule on such allegation . . . .

Dkt. No. 17-14, Ex. A at 15. FSL relies heavily on the many decisions in the Ninth Circuit and elsewhere finding that incorporation of the rules of the American Arbitration Association ("AAA") is sufficient to delegate the question of arbitrability to the arbitrator. Dkt. No. 17 at 20.

---

[7] The Court relies on the version of Japan's Arbitration Act (Dkt. No. 17-14, Ex. A) provided by FSL in the declaration of Takahiro Nonaka, a partner in the office of FSL's counsel's Tokyo office. Cypress does not raise any objections to this translation.

The AAA Rules provide that the arbitrator "shall have the power to rule on his or her own jurisdiction . . . without any need to refer such matters first to a court."  AAA, Rule 7, available at: https://www.adr.org/sites/default/files/Commercial_Rules-Web.pdf (last accessed April 24, 2023)).  FSL argues that the "may make a determination" language of the JCAA Rules and the "may rule" / "shall rule" language of Japan's Arbitration Act are not meaningfully different from the "shall have the power to rule" language of the AAA Rules, and should likewise be construed as clear and unmistakable delegations of authority.  Dkt. No. 17 at 20; Dkt. No. 29 at 6-7.

Cypress argues that the use of the word "may" in the JCAA Rules and in Japan's Arbitration Act distinguishes these provisions from those of the AAA.  Dkt. No. 23 at 24-25.  It contends that the fact that the arbitrator has authority to decide questions of arbitrability does not mean that the arbitrator has *exclusive* authority, or that such questions *must* be decided by the arbitrator and not the Court.  *Id.* at 24 (citing *RSL Funding, LLC v. Felicia Alford*, 239 Cal. App. 4th 741, 745 (2015) ("We agree that settled principles of statutory construction direct that 'we "ordinarily" construe the word may as permissive and the word shall as mandatory . . . .'") (internal citation omitted)).

The Ninth Circuit has not considered whether incorporation of the JCAA Rules or Japan's Arbitration Act constitutes clear and unmistakable evidence of delegation.  The Court is sympathetic to Cypress's observations that a rule giving the arbitrator power to decide arbitrability is not the same as a rule giving the arbitrator the sole power to decide arbitrability.  However, the Court agrees with FSL that the applicable language in the JCAA Rules is indistinguishable from the language in the AAA Rules, and the Ninth Circuit has consistently held that incorporation of the AAA Rules is clear and unmistakable evidence of delegation.  *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1031 (9th Cir. 2022) ("[E]very version of the Provider Manual has included an arbitration provision delegating gateway questions of arbitrability to the arbitrator.  The pre-2014 Manuals did so by incorporating the Rules of the American Arbitration Association, which contain a delegation clause."); *Brennan*, 796 F.3d at 1130 ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.").  The Ninth Circuit has reached the same conclusion with respect to

1  agreements incorporating the ICC Rules[8] and the UNCITRAL Rules,[9] expressly analogizing these
2  rules to the AAA Rules.  *Portland General Electric v. Liberty Mutual Insurance*, 862 F.3d 981,
3  985 (9th Cir. 2017) (holding that the language of the ICC Rules "makes clear that the arbitrators
4  are vested with the authority to determine questions of arbitrability," because of "the similarity
5  between the ICC Rules and those of the AAA."); *Oracle Am.*, 724 F.3d at 1073 (holding that "[b]y
6  giving the arbitral tribunal the authority to decide its own jurisdiction, both the 1976 and 2010
7  UNCITRAL rules vest the arbitrator with the apparent authority to decide questions of
8  arbitrability.").  Finally, the sole district court decision addressing the JCAA Rules concludes that
9  "by incorporating the rules of procedures of the AAA and JCAA, the parties 'clearly and
10 unmistakably' provided for arbitration of arbitrability," albeit without discussing in detail the
11 similarity or dissimilarity of those rules.  *See Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.*
12 (*In re: Cathode Ray Tube (CRT) Antitrust Litig.*), No. 3:14-CV-02510, 2014 WL 7206620, at *4
13 (N.D. Cal. Dec. 18, 2014).

14  Having considered the Ninth Circuit authority regarding delegation, the Court concludes
15 that incorporation of the JCAA Rules in the Foundry Agreement is clear and unmistakable
16 evidence that FSL and Cypress agreed to submit questions of arbitrability to the
17 arbitrator.  However, even if the question of arbitrability were reserved for the Court, Cypress
18 conceded during the hearing that the only claim against FSL it contends is not arbitrable is the
19 UCL claim.  *See* Dkt. No. 36 at 33:20-34:2.  But Cypress does not dispute that the arbitration
20 provision carves out only claims for "equitable relief," and that, as currently pled, Cypress's UCL
21 claim does not seek any equitable remedies, but only compensation for the expenses of defending

---

[8] "[I]f any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal . . . ."  ICC Rules, Article 6(3) (available at: https://iccwbo.org/dispute-resolution/dispute-resolution-services/arbitration/rules-procedure/2021-arbitration-rules/ (last accessed April 24, 2023)).

[9] "The arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement."  UNCITRAL Arbitration Rules art. 23, para. 1, G.A. Res. 65/22, U.N. Doc. A/RES/65/22 (Jan. 10, 2011).

against FEI's claims and for any payment that may be owed by Cypress to FEI. *See id.* at 31:19-33:4; Dkt. No. 23 at 20-22. In any event, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. . . . That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 529 (2019)

### C.     *Colorado River* Doctrine

Cypress argues separately that the Court should decline jurisdiction over this matter pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Dkt. No. 23 at 25-29. Under *Colorado River*, "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter." *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (internal quotation marks and citations omitted). The doctrine applies only when the state and federal actions are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). When that threshold requirement is satisfied, courts in the Ninth Circuit apply an eight-factor test to determine whether to decline jurisdiction:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011). These factors should be applied in a "pragmatic, flexible manner," only in "exceptional circumstances," and "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 19, 21 (1983).

FSL argues that the Court has no discretion to abstain from deciding its petition to compel arbitration, and in any case, the *Colorado River* factors do not weigh in favor of abstention. Dkt. No. 29 at 12-15. While FSL cites no binding authority for the proposition that this Court may not

10

consider whether to abstain under these circumstances, the Court nevertheless agrees that the *Colorado River* factors do not weigh in favor of abstention.

First, the parties agree that the first two factors are not relevant to the instant circumstances. Dkt. No. 23 at 28, n.6; Dkt. No. 29 at 14.

Second, during briefing on the petition to compel arbitration, FSL concurrently filed a motion to sever and stay Cypress' claims against it in the state court action, pursuant to California Code of Civil Procedure § 1281.4, which states:

> If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon petition of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies.
>
> If an application has been made to a court of competent jurisdiction, whether in this State or not, for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon petition of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies.
>
> If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only.

*See* Dkt. No. 34, Ex. A (order in *Kaga FEI Co.*, No. 19-cv-359055). On April 13, 2023, the state court granted FSL's motion, severing and staying Cypress's claims against FSL, in view of FSL's petition to compel arbitration. *See id.*, Ex. A at 6-7. Thus, the state court's stay and severance has alleviated any concerns that this Court's order on FSL's petition will lead to piecemeal litigation. Moreover, and importantly, "[the Arbitration Act] requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20.

Third, Cypress's argument that the fourth factor weighs in its favor is unavailing, as little progress had been made in the state court action at the time the state court granted its stay. *See id.*

11

at 21 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.").

Finally, none of the remaining factors weigh in favor of declining jurisdiction. The Convention and the FAA provide the rule of decision as to whether the parties' claims must be arbitrated. This factor thus weighs against this Court's declination. *See id.* at 24-26. And while Cypress argues that the state court has a "tool" by which it can *stay arbitration* pending the state court's decision on the parties' claims, *see* Dkt. No. 23 at 29, the state court has already severed and stayed Cypress's claims against FSL in that forum. Cypress has presented no evidence that FSL is attempting to engage in forum shopping.

In sum, the Court denies Cypress's request that this Court decline jurisdiction in favor of the state court action pursuant to *Colorado River*.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants FSL's petition to compel arbitration in Japan, as provided in Section 20.5 of the Foundry Agreement.

**IT IS SO ORDERED.**

Dated: June 5, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge